| | |
|---|---|
| 1 | Felicia Y. Yu (SBN 193316) |
| | REED SMITH LLP |
| 2 | 355 South Grand Avenue, Suite 2900 |
| | Los Angeles, CA 90071-1514 |
| 3 | Telephone: (213) 457-8000 |
| | Facsimile: (213) 457-8080 |
| 4 | Email: fyu@reedsmith.com |
| 5 | Mark S. Melodia, Esq. (*Pro Hac Vice Pending*) |
| 6 | Paul Bond, Esq. (*Pro Hac Vice Pending*) |
| | REED SMITH LLP |
| 7 | Princeton Forrestal Village |
| | 136 Main Street, Suite 250 |
| 8 | Princeton, NJ 08540 |
| | Telephone: (609) 520-6015 |
| 9 | Facsimile: (609) 951-0824 |
| | Email: mmelodia@reedsmith.com |
| 10 | pbond@reedsmith.com |
| 11 | Attorneys for Defendant |
| | LENDINGTREE, LLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| PAUL SHAVER, on behalf of himself and all others similarly situated, | Case No. SACV08-00756 CJC (ANx) |
| | Related Cases Nos. |
| Plaintiff, | SACV08-00660 CJC (ANx) |
| | SACV08-00841 CJC (ANx) |
| vs. | SACV08-00755 CJC (RNBx) |
| LENDINGTREE, LLC, a Delaware limited liability company; NEWPORT PENDING CORP., a California corporation; SAGE CREDIT CO., a California corporation; HOME LOAN CONSULTANTS, INC., a California corporation; CHAPMAN CAPITAL, INC., a California corporation; and SOUTHERN CALIFORNIA MARKETING CORP., a California corporation, | **DEFENDANT LENDINGTREE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE**<br><br>[Rule 12(b)(3)]<br><br>Date: November 3, 2008<br>Time: 1:30 p.m.<br>Place: Courtroom 9B |
| Defendants. | The Honorable Cormac J. Carney |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS AND PROCEDURAL HISTORY | 2 |
| III. | LEGAL ANALYSIS: CHOICE-OF-FORUM | 5 |
| | A. Federal Law Determines Enforceability of Forum Selection Clauses | 5 |
| | B. United States Supreme Court Precedent Recognizes Forum Selection Clauses Are Permissible in Situations Like LendingTree's | 6 |
| | C. The Burden is on Plaintiffs to Show Enforcement of the Forum Selection Clause is Unreasonable | 7 |
| |    1. The Contract Chooses North Carolina as a Forum Because LendingTree's Operations are in North Carolina | 8 |
| |    2. North Carolina is an Available and Convenient Forum | 8 |
| |    3. North Carolina Provides Adequate Remedies | 9 |
| |    4. Enforcement of the Forum Selection Clause Will Contravene No Strong Public Policy of California | 9 |
| IV. | CONCLUSION | 11 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page**

### CASES

*Argueta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996)...................................................................4, 6

*Carnival Cruise Lines, Inc. v. Shute,*
   499 U.S. 585 (1991)..................................................................................5, 6

*Cf., Provencher v. Dell,*
   409 F. Supp. 2d 1196 (C.D. Cal. 2006) ......................................................7

*M/S Bremen v. Zapata Off-Shore Company,*
   407 U.S. 1 (1972).........................................................................................5

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
   858 F.2d 509 (9th Cir. 1988)................................................................4, 5, 6

*Ruiz v. Gap, Inc.,*
   540 F. Supp. 2d 1121 (N.D. Cal. 2008).................................................9, 10

### STATUTES and LEGISLATION

15 U.S.C.A. § 1681 *et seq.*..............................................................................3

28 U.S.C.A. § 1404(a) ..............................................................................1, 11

Fair Credit Reporting Act .................................................................................3

N.C. Gen. Stat. § 75-16....................................................................................8

### CODES

California Civil Code § 1798.80 *et seq.* ..........................................................3

Federal Rule of Civil Procedure 12(b)(3) ...............................................1, 11

Professional Code § 17200 *et seq*....................................................................3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I. **PRELIMINARY STATEMENT**

Each Plaintiff in the four putative national class actions related before this Court agreed by binding contract not to sue LendingTree, LLC ("LendingTree") outside of its home forum, Mecklenburg County, North Carolina. Yet these Plaintiffs have brought these multiple suits in Santa Ana, over 2,000 miles from LendingTree's Mecklenburg County headquarters. Counsel for LendingTree met and conferred with counsel for Plaintiffs on Wednesday, September 3, 2008 concerning the substance of this Motion. The parties could not come to an agreement. Therefore, LendingTree moves under Federal Rule of Civil Procedure ("Rule") 12(b)(3) and substantive federal law to enforce the parties' agreement and to dismiss LendingTree from these actions. As to LendingTree, venue in California is improper.[1]

Federal law governs the enforcement of forum selection clauses. The United States Supreme Court and the courts of the Ninth Circuit have recognized that forum selection agreements between companies and consumers are prima facie valid. Forum selection agreements make possible the existence of companies like LendingTree – which serves consumers in all 50 States via its website and collects no charge from consumers – and facilitate the orderly judicial review of consumer disputes without the specter of LendingTree being dragged into any court in any state in the country at the whim of any given consumer. Under federal law, unless each Plaintiff can show that the forum selection agreement is unreasonable as to her, LendingTree's Motion must be granted.

Not a single Plaintiff can show that selection of North Carolina as the exclusive forum for litigation is unreasonable. The contract does not select some remote location for the purpose of discouraging suit. Instead, the forum selection clause

---

[1] In the alternative, LendingTree would consent to the transfer under 28 U.S.C.A. § 1404(a) of these actions to the United States District Court for the Western District of North Carolina, which encompasses Mecklenburg County.

– 1 –

chooses North Carolina because North Carolina is LendingTree's principal place of operations. Even a cursory review of the Plaintiffs' respective home States, spread out across the country, shows why LendingTree must be able to rely on a forum selection clause to centralize litigation close to home. Plaintiffs hail from Florida (*Shaver*), Georgia (*Baker and Woods*), Nevada (*Bercaw*), New York (*Garcia*), Oklahoma (*Winsett*), Pennsylvania (*Swearingen*), Utah (*Larson*), and Virginia (*Paxton-Collins*). *Bercaw* Complaint, 11-13; *Bradley* Complaint, 9-12; *Garcia* Complaint, 9; *Shaver* Complaint, 11. Without an enforceable forum selection clause, LendingTree would be subject to litigation anywhere in the country.

Lastly, enforcement of the forum selection clause will not violate any strong public policy of California. **Not one of the nine (9) Plaintiffs is a resident of California. None of the Plaintiffs accessed LendingTree's website while in California.** None of LendingTree's relevant operations is in California. Plaintiffs can state no colorable claim under California's statutory law. Unlike North Carolina, California has absolutely nothing at stake in this litigation, and there is no suggestion that this dispute cannot be readily resolved by the courts in North Carolina, the forum originally agreed to by Plaintiffs.

As a matter of federal law, the forum selection clause must be enforced, and LendingTree dismissed from these actions.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Each Plaintiff alleges that he or she requested mortgage quotes from the LendingTree website. As an <u>unavoidable</u> part of that process, a user of the LendingTree website <u>must</u> check off a box indicating that he or she "agree[s] to and accept[s]" the Terms of Use Agreement. A copy of the Terms of Use Agreement is made available to the consumer through an online hyperlink. The users acknowledge to LendingTree that they have read and understood the Terms of Use. Declaration of Donald Norton ("Norton Decl."), Exhibits 1, 2, 5, and 6.

DEFENDANT LENDINGTREE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE
Case 3:08-cv-02081-FDW    Document 12    Filed 09/12/2008    Page 5 of 14

While the exact language has undergone minor changes during 2007 and 2008 (all of which is described in Exhibit 5, pages 5 and 6, of the Norton Decl.), the form has always required the user to affirmatively check off a box agreeing to the Terms of Use, as below:

I agree to and accept the LendingTree Privacy Policy, Lending Disclosures, Affiliated Business Disclosures, and Terms of Use in electronic form, and acknowledge that my loan request may be sent to LendingTree Loans, an affiliate of LendingTree. I acknowledge that I have read and understand these documents. (Please print these documents for your records.)

☐ Yes, I agree and want to receive competing offers with no cost and no obligation.

**PRIVACY & SECURITY PROTECTED**    << Back    **SAVE AND CONTINUE >>**

The applicant cannot continue in this process without checking off the agreement box. Norton Decl. ¶ 9. Therefore, to take advantage of free services from LendingTree, Plaintiffs each agreed to these Terms of Use.

The attached Terms of Use contain a provision selecting the substantive laws of North Carolina as controlling. "This Agreement shall be subject to and construed in accordance with the laws of the State of North Carolina, excluding its conflict of laws principles." Norton Decl., Exhibit 1, para. 15 and Exhibit 2, para. 15.

Further, the Terms of Use select North Carolina as the exclusive forum of suit. In relevant part, the Terms of Use require that, "in any instance of any lawsuit between you and LendingTree, the parties agree that jurisdiction over and venue of any suit shall be exclusively in the state and federal courts sitting in Mecklenburg County, North Carolina." Norton Decl., Exhibit 1, para. 14 and Exhibit 2, para. 14.

Each Plaintiff agreed to the Terms of Use. Each enjoyed LendingTree's services free of charge. Then LendingTree announced that it had been the victim of

– 3 –

criminal data theft in Charlotte, North Carolina. Plaintiffs promptly breached their respective agreements with LendingTree and, in an ill-disguised attempt at forum-shopping, sued LendingTree in, of all places, California.

Plaintiffs allege no loss of money, and no loss of tangible property, only increased risk of identity theft. In these putative class actions, Plaintiffs seek relief for LendingTree service users throughout the United States, not just users in California. Plaintiffs allege that LendingTree violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. §1681 *et seq.*, California Civil Code §1798.80 *et seq.* ("§1798.80"), and California Business and Professional Code §17200 *et seq.* ("§17200"). Plaintiffs further make a variety of common law claims against LendingTree.

Notably, not all Plaintiffs took the same approach. LendingTree faced three other putative class action suits arising from the same events (the "North Carolina Actions"). Each of those actions was properly filed in or transferred voluntarily to the United States Court for the Western District of North Carolina.[2] LendingTree moved to compel individual arbitration of the claims brought by named Plaintiffs in the North Carolina Actions, based on an arbitration agreement and class action waiver in the Terms of Use. The Plaintiffs in the North Carolina Actions objected that the Terms of Use were unconscionable as a matter of North Carolina law. United States District Court Hon. Frank Whitney disagreed and compelled each of the North Carolina actions to individual arbitration under the Terms of Use. Exhibits "1" and "2" to LendingTree's Request for Judicial Notice ("RJN"). Judge Whitney found that the Terms of Use constituted a valid, binding, and enforceable contract:

> Both parties in this case indicated assent to the terms of use…LendingTree by providing the website and the terms and plaintiffs by affirm[atively] checking the box stating that they agreed to those terms.

---

[2] *Spinozzi v. LendingTree, LLC*, 3:08-cv-00229-FDW-DCK; *Carson v. LendingTree*, LLC, 3:08-cv-00247-FDW-DCK; *Mitchell v. Home Loan Center, Inc. et al.*, 3:08-cv-00303-FDW-DCK.

[RJN, Exhibit "1" at T54:13-16 and Exhibit "2."]

Judge Whitney further rejected North Carolina Plaintiffs' contention that that the Terms of Use were unconscionable. Judge Whitney found "no facts indicating unfair surprise," *Id*. at T58:14-15, that "plaintiffs were able to peruse LendingTree's website at their leisure," T58:19-20, that plaintiffs had a duty to read before they accepted the Terms of Use, T58:21-59-20, and that "Plaintiffs have not demonstrated a lack of meaningful choice," as LendingTree "has a number of major competitors, any of which were just as available to Plaintiffs," T59:21-24.

In addition to the actions before this Court and the North Carolina Actions, there is another putative class action filed in the United States District Court for the Northern District of Illinois.[3] That action was filed by Larry D. Drury, Ltd., also undersigned counsel urging California as a proper venue for *Bercaw*. *Garcia*, another case before this Court, was originally filed in New York by a New York Plaintiff and his New York firm. It has since been dismissed and refiled in California. Lastly, there is a proceeding pending before the Judicial Panel on Multidistrict Litigation. Defendants and Plaintiff-movants have argued for pre-trial consolidation in North Carolina; Plaintiff-respondents have urged consolidation in California.

Without waiver, LendingTree is not at this point asking this Court to enforce the class action waiver or arbitration provisions of the Terms of Use. LendingTree only asks that these actions be dismissed for failure to comply with the Terms of Use, i.e., for filing litigation outside of Mecklenburg County, North Carolina.

## III. LEGAL ANALYSIS: CHOICE-OF-FORUM

### A. Federal Law Determines Enforceability of Forum Selection Clauses.

"Federal law governs the validity of a forum selection clause." *Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 324 (9th Cir. 1996), *citing with approval to*

---

[3] *Miller v. Lending Tree LLC*, No. 1:08-cv-2300 (N.D. Ill.).

– 5 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses." *Manetti-Farrow, Inc.*, 858 F.2d at 513. Therefore, this Motion is based on the well-settled federal substantive law governing forum selection clauses.

### B. United States Supreme Court Precedent Recognizes Forum Selection Clauses Are Permissible in Situations Like LendingTree's.

Two United States Supreme Court decisions set the standard for enforcement of forum selection clauses. *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1 (1972) (hereafter, "*Bremen*") and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (hereafter, "*Carnival Cruise Lines*").

In *Bremen*, the United States Supreme Court enforced a forum selection agreement that required a commercial dispute to be settled in the courts of England. The Court found that the "correct approach" is "to enforce the forum clause specifically unless [the non-movant] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching[.]" *Bremen*, 407 U.S. at 15.

*Carnival Cruise Lines* expanded the Bremen result to consumer contracts. In *Carnival Cruise Lines*, at issue was the enforceability of forum selection provisions printed on the back of cruise tickets. The Court noted that in contrast to the negotiated commercial contract in *Bremen*, "respondents' passage contract was purely routine and doubtless nearly identical to every commercial passage contract issued by petitioner and most other cruise lines." *Carnival Cruise Lines*, 499 U.S. at 593. "Common sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line." *Id.*

Still, the United States Supreme Court held that the forum selection agreements were enforceable. After all, a cruise ship "typically carries passengers from many locales," and without a forum selection clause would be "subject…to litigation in several different fora." *Id.*

> Additionally, a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

[*Id.*]

Likewise, LendingTree maintains a website available to the consumers of 50 States. Absent a working forum selection clause, LendingTree would be required to litigate in all 50 States. Explicitly choosing North Carolina at the front end of the transaction reduces the uncertainty on all sides. Lastly, any consumer obtaining mortgage quotes at no charge from LendingTree is enjoying the benefits made possible by LendingTree's containment of litigation cost. Therefore, the LendingTree forum selection provision is enforceable pursuant to *Carnival Cruise Lines*.

### C. The Burden is on Plaintiffs to Show Enforcement of the Forum Selection Clause is Unreasonable.

In the Ninth Circuit, a "heavy burden" falls to the opponent of a forum selection clause to show that the clause is unreasonable. *Argueta*, 87 F.3d at 325.

A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court, or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

DEFENDANT LENDINGTREE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE

[*Id.* (quotation marks and citations omitted).]

Plaintiffs cannot meet this burden.

### 1. The Contract Chooses North Carolina as a Forum Because LendingTree's Operations are in North Carolina.

As Judge Whitney found in his opinion, each Plaintiff had a duty to read the Terms of Use, which contained no unfair surprise. Far from being the result of fraud, undue influence, or overweening bargaining power, the selection of North Carolina as the exclusive forum for any litigation between a consumer and LendingTree is natural. LendingTree's "principal office street address" is 11115 Rushmore Drive, Charlotte, North Carolina 28277. Limited Liability Company Annual Report, filed by LendingTree LLC with North Carolina Secretary of State, Exhibit "3" to RJN. North Carolina therefore has a substantial relationship to this dispute. *Cf., Provencher v. Dell*, 409 F.Supp.2d 1196, 1201 n.5 (C.D. Cal. 2006) (enforcing Texas choice of law where Dell was principally located in and selling goods from Texas).

LendingTree's means in offering the Terms of Use were entirely proper. As Judge Whitney found reviewing the same Terms of Use, Attachment B, there are "no facts indicating unfair surprise," Exhibit "1: to RJN at T58:14-15, "plaintiffs were able to peruse LendingTree's website at their leisure," T58:19-20, and "Plaintiffs have not demonstrated a lack of meaningful choice," as LendingTree "has a number of major competitors, any of which were just as available to Plaintiffs," T59:21-24. LendingTree users have ample time – up to a half hour – to review the Terms of Use, or any other provision of the LendingTree website, before deciding whether to proceed. Plaintiffs' free, unhurried choices led each to agree to the Terms of Use, and bind each of them not to sue LendingTree outside of LendingTree's home forum of Mecklenburg County, North Carolina.

### 2. North Carolina is an Available and Convenient Forum.

As noted above, of the nine Plaintiffs before the Court, **not one is a California resident**. Plaintiffs are from, for example, Florida (*Shaver*), Georgia (Baker and

– 8 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Woods), New York (*Garcia*), Pennsylvania (*Swearingen*), and Virginia (*Paxton-Collins*). These East Coast Plaintiffs cannot seriously object on the grounds of time or expense to having their cases heard in North Carolina instead of the much-more distant California. Moreover, each Plaintiff seeks to represent a national class, including North Carolina residents. Plaintiffs can hardly seek to represent North Carolina residents and object to doing so in North Carolina.

### 3. North Carolina Provides Adequate Remedies.

Plaintiffs may object that a North Carolina court will apply North Carolina law (per the TOU), and deny Plaintiff's California claims a day in Court. Even if Plaintiff is right that the Court will apply North Carolina law, per the TOU, this does not deny Plaintiff any substantive right. North Carolina's laws protect Plaintiffs at least as well as do California's. In fact, North Carolina's main consumer protection statute provides a greater recovery for successful plaintiffs. A successful §17200 plaintiff is entitled only to injunctive relief, including restitution. By contrast, a consumer recovering under North Carolina's Unfair Competition or Trade Practices Act can recover civil damages and is automatically entitled to a trebling of any award. N.C. Gen. Stat. § 75-16. Therefore, in the unlikely event that Plaintiffs have a cognizable claim at all, application of North Carolina's consumer protection laws will not prejudice Plaintiffs. Even if the North Carolina court decides to apply North Carolina law, that will not change North Carolina's status as an adequate forum.

### 4. Enforcement of the Forum Selection Clause Will Contravene No Strong Public Policy of California.

Plaintiffs may claim that holding them to their forum selection will somehow injure California's interest in the prosecution of California statutory claims. Even if Plaintiffs were precluded from asserting California claims in North Carolina court, Plaintiffs' California statutory claims are transparent window dressing. For example, Plaintiffs bring suit under §1798.80. The explicit text of that statute notes, "It is the intent of the Legislature to ensure that personal information *about California residents*

– 9 –

DEFENDANT LENDINGTREE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE

Case 3:08-cv-02081-FDW   Document 12   Filed 09/12/2008   Page 12 of 14

is protected." §1798.81.5(a) (emphasis added). The statute then imposes obligations on a "business that owns or licenses personal information *about a California resident*" and "a business that discloses personal information *about a California resident*." §1798.81.5(b)-(c) (emphasis added). California's Legislature did not enact this statute to protect the residents of Florida, Georgia, Nevada, New York, Oklahoma, Pennsylvania, Utah, and Virginia, and, from a constitutional sense, it is doubtful that California would have the authority to regulate transactions between a North Carolina company and resident of another state. No harm is done to California's fundamental policies by leaving such persons to the remedies available under North Carolina law.[4]

Plaintiffs' §17200 claims likewise do not meet the requirements of that California statute. Since the passage of Proposition 64, §17204 has required a §17200 plaintiff to allege that he or she "has suffered injury in fact and *has lost money or property* as a result of the unfair competition." (Emphasis added). None of Plaintiffs has alleged loss of money. Plaintiffs paid no money to LendingTree. None of Plaintiffs has alleged loss of property. Even if an intangible such as personal information is "property" under §17204, Plaintiffs have not *lost* any. Plaintiffs do not allege that they now have no access to information about themselves. Proposition 64 was enacted exactly because Californians agreed that, "Frivolous unfair competition lawsuits clog our courts and cost taxpayers." Proposition 64, §1(c). To permit this suit to stay in California would itself be a frustration of important California public policy against speculative and unripe suits.

Plaintiffs' counsel in this very case has already litigated and lost the issue of whether §17200 permits recovery on increased risk of identity theft. See, *Ruiz v. Gap,*

---

[4] LendingTree is also exempt from §1798.80. As a licensed mortgage broker, LendingTree is subject to the California Financial Information Privacy Act of 2003. Per §1798.81.5(e)(2), all such financial institutions are exempt from §1798.80 requirements. The California Financial Information Privacy Act has no private right of action. The inability of *these Plaintiffs* to point to any meaningful and enforceable interest that they can pursue against LendingTree under California law is relevant to the lack of any strong interest of California in this case.

– 10 –

*Inc.*, 540 F.Supp.2d 1121, 1127 (N.D. Cal. 2008). In *Ruiz*, plaintiff applied for a job at The Gap. The Gap subsequently notified Ruiz that information from his application had been stolen. *Ruiz* sued under §17200. The Gap moved for judgment on the pleadings. As to the §17200 claim, the Court granted defendant's motion:

> *Ruiz* has lost neither money nor property. His attempt to allege that the theft of the laptops somehow constitutes a loss of property because his personal information was contained on the laptop is unavailing. Nor has *Ruiz* presented any authority to support the contention that unauthorized release of personal information constitutes a loss of property. Without any such authority, the Court is constrained to find that Ruiz has not alleged any loss of property and therefore has not stated a valid claim under §17200.

[*Id.*]

Plaintiffs' §17200 case, already debunked by a federal court in California, can provide no excuse for Plaintiffs' non-compliance with the parties' choice of venue. No "strong public policy" of California will be offended by enforcement of this Motion.

## IV. CONCLUSION

Therefore, LendingTree asks that its Motion to Dismiss under Rule 12(b)(3) be granted, and that LendingTree be dismissed from all of the above-captioned suits. In the alternative, LendingTree would consent to the transfer under 28 U.S.C.A. §1404(a) of these actions to the United States District Court for the Western District of North Carolina, which encompasses Mecklenburg County.

DATED: September 12, 2008          REED SMITH LLP

                                   By  */s/ Felicia Y. Yu*
                                       Felicia Y. Yu
                                       Attorneys for Defendant
                                       LENDINGTREE, LLC

– 11 –